IN RE ESTATE OF MARY ANN NICHOLSON.

No. 45473.
No. 45507.

1194 

█ 

█ 

█ 

█ 

OCTOBER 21, 1941.

REHEARING DENIED FEBRUARY 13, 1942.

Clarence I. Spencer, for Grace Beymer and Grace Beymer, Executrix, appellant.

E. A. Lingenfelter, for Paul R. Nicholson, appellant.

Hiram S. Hunn, for claimants Grace F. Nicholson, Executrix of the estate of Arthur J. Nicholson, and Clara B. Nicholson, sole beneficiary of the estate of Robert V. Nicholson, appellees.

BLISS, J.—It is difficult to state concisely and clearly the issues and facts in this involved record in which the pleadings, matters filed, and orders recorded, fill approximately ninety pages of the abstracts. In addition, the bulky files in the estate were considered by the court, and have been certified to us.

Mary Ann Nicholson of Des Moines died testate on January 4, 1933, at the age of ninety-four. Her estate consisted chiefly of her home, and a business property, both in Des Moines. By her Will, executed April 20, 1929, she gave her home to her eldest daughter, Harriett Wilkes, together with a year's rent from the business property. The remainder of her property she devised equally to her six children. One of them, W. T. Nicholson, predeceased the testatrix leaving a widow and children surviving. One of the latter is the appellant, Paul R. Nicholson. She nominated her children, Grace Beymer, of Des Moines, and Arthur J. Nicholson, of Long Beach, California, as Executors. The Will was probated on February 6, 1933, at which time the court appointed the executors named by the testatrix. There was no order made at this time for the publication of the notice of their appointment. Grace Beymer took the oath of office on this date, February 6, 1933. C. E. Hunn had drawn the Will and he and his son, H. S. Hunn, witnessed its execution. They apparently attended to its probate, and were attorneys for the estate and its executors until February 20, 1936. Notice of appointment of the executors was posted on February 6, 1933, and sworn proof of the posting by H. S. Hunn was filed on the same day. Arthur J. Nicholson took his oath of office in Los Angeles County, California, on February 9, 1933. Letters testamentary were issued to both by the clerk on February 16, 1933, and, as provided by Code section 11890, such notice of the appointment as directed

by the court or clerk, was endorsed thereon. This order directed that the publication be by posting one notice. It is to be noted that the notice posted on February 6, 1933, was before any authorization therefor. No other notice was published or posted except as hereinafter stated. These matters are to be kept in mind because of the contention of appellants that the claims in question are not of the third class. But one other claim was filed. It appears from the record that the estate is solvent. The business property is rented under a long-term lease for $1,000 a year. The lease had been put up as collateral security to a $3,200 bank loan, which has been reduced to below $2,000. The property apparently did not bring in sufficient income for the needs of the testatrix, and from July 3, 1925, to June 23, 1932, on six occasions, her son, Arthur J. Nicholson, loaned her money aggregating $1,375, evidenced by her six interest-bearing promissory notes. No part of this indebtedness had been paid by the mother at her death. In May, 1933, this son made out a verified claim against the estate and its administrators and sent it, with copies of the notes attached, to C. E. Hunn, attorney for the executors, and to his coexecutrix to be filed.

On September 1, 1909, the decedent and her husband gave their promissory note for $1,000, payable in five years to Raymond B. Hastings, who assigned it, by indorsement, on September 10, 1918, to Robert V. Nicholson, a son of the testatrix. This note was unpaid at her death. On June 28, 1920, she made the following memorandum:

"I am writing this so there will be no cause of any trouble. I gave Rob the note of a Thousand Dollars against this house with interest due after my death on the amount.
 "Mrs. Mary A. Nicholson, his mother."

This writing was placed in an envelope on which was written "Robert V. Nicholson from his mother."

Robert V. Nicholson sent proof of claim on this note, sworn to by him in California on July 14, 1933, to the executrix or her attorneys. This claim states:

"R. V. Nicholson, plaintiff, claims of the Administrators of the estate of said decedent the sum of One Thousand (1,000) Dollars and interest at the rate of 6% from the 10th day of

September, 1918, to March 10th, 1933. (A total of Eighteen hundred and seventy and 00/100 Dollars ($1,870) for payment· of note * * *.''

Although the note provides that unpaid interest when due should become part of the principal and draw interest, the claim shows that the creditor was claiming only simple interest of $60 a year for fourteen and one-half years or $870 interest. The files in the estate show there was some attempt by discussion between Mrs. Beymer, the Executrix, her attorneys, Mrs. Wilkes, and other beneficiaries of the estate to the proposed end that the claims of both Arthur and Robert would be allowed, but that payment would be deferred so that the net income of the estate could go to the support of Mrs. Wilkes, who was sixty-seven years old, until her death. However, if there was such arrangement attempted, it was not consummated. On September 5, 1933, the inventory, and also both of the claims were filed with the Clerk of the court, by the Executrix or the attorneys·for the estate.

On February 20, 1936, the firm of C. E. Hunn and H. S. Hunn ceased to be attorneys for the estate and its Executrix. Arthur J. Nicholson died October 31, 1935, and on November 14, 1935, the court made Grace Beymer the sole Executrix. Grace F. Nicholson, the wife of Arthur, as Executrix of his estate, became the owner of his claim. On March 25, 1936, Grace F. Nicholson, as such executrix, through her attorneys, C. E. Hunn and H. S. Hunn, filed application for the allowance of her deceased husband's claim, in the sum of $2,239.88 with interest as provided in the notes from March 25, 1936. She prayed for an order setting the application for hearing and prescribing notice therefor. She asked for attorney fees for her attorneys, and affidavit therefor by H. S. Hunn was attached to the application. The time for the hearing was fixed and notice upon Grace Beymer, as Executrix, was served as ordered. On April 2, 1936, Grace Beymer, as Executrix, signed the following indorsement on the back of the Arthur J. Nicholson claim filed in the Clerk's office, to wit:

''I, Grace Beymer, Executrix of the above named estate [Mary Ann Nicholson] being fully satisfied with the correct-

ness of the claims within, do, with the approbation of this court, admit and allow the same in the sum of $1,375 and interest as provided in said notes.''

On June 4, 1938, Grace Beymer, Executrix, filed answer to the application for the allowance of the Arthur J. Nicholson claim, stating that there were no objections of any kind to the allowance of the claim, and never had been, and no contest had ever been made thereon, and that she objected only to the allowance of attorney fees to Hunn & Hunn, upon the ground that they were attorneys for the estate when the claim was filed, and also because there was no contest. On August 31, 1938, claimant Grace F. Nicholson, Executrix of the estate of Arthur J. Nicholson, filed a motion to strike all of the answer with reference to the attorney fees of Hunn & Hunn. This motion was sustained on October 18, 1938.

Robert V. Nicholson died at Long Beach, California, on July 8, 1934, and under his Will his wife, Clara B. Nicholson, became his sole beneficiary. On May 14, 1936, through her attorneys Hunn & Hunn, she filed application for the allowance of her husband's claim, in the sum of $2,800.46, with interest as provided in the note from May 10, 1936. She asked for attorney fees for her attorneys and the statutory attorney fee affidavit was attached to the application. The application was set for hearing and the notice to the Executrix fixed in the court's order, was given. On May 22, 1936, the Executrix filed answer to this application alleging (1) that the note was barred by the statute of limitations; (2) that it was not filed within six months after publication of notice of the executors' appointment; (3) the answer also denied any delay in filing her reports, and alleged that such delay, if any, was caused by the dilatory and negligent acts of Hunn & Hunn, then representing her. Claimant filed motion on May 19, 1938, to strike allegations (2) and (3) which was sustained on October 18, 1938. The claimant, Clara B. Nicholson, on May 8, 1938, amended her application by alleging that the purported notice of the appointment of the executors was given before any authorization as to the manner of giving notice as provided by Code section 11890, and the notice was void, and the claim was of the third class. On October 8, 1938, she filed a second amendment to her application

for allowance by setting out the writing of the testatrix of June 28, 1920, with respect to giving "Rob the note of One Thousand Dollars" above copied, and alleging it to be a written admission of the indebtedness, and tolling the statute of limitations. To the second amendment, the Executrix, Grace Beymer, through her attorney, A. E. Mahan, filed a demurrer, on October 12, 1938, upon the grounds (1) that the facts stated in the amendment did not entitle claimant to the relief demanded; (2) that the writing did not comply with the statute, and did not identify the note on which the claim was based; and, (3) that it was dated more than ten years prior to the filing of the claim. A hearing was had on October 18, 1938, on both claims, before Judge Jordan. The claimants appeared by H. S. Hunn, and the Executrix of the estate, by her attorney, A. E. Mahan. From the testimony of Judge Jordan and A. E. Mahan, given at the hearing in April, 1940, resulting in the judgment from which this appeal was taken, it appears that at the hearing on the claims on October 18, 1938, the motions to strike, and the demurrer of the Executrix were fully argued by both sides and briefs were filed. It was conceded by both sides, and the court was so told, that the ruling on the demurrer to the application for the allowance of the Robert V. Nicholson claim by his widow, would determine that claim. If the demurrer was sustained the claim would be denied, and if the demurrer was overruled, the claim would be allowed. On the day before this hearing, Mr. Mahan had told Grace Beymer, the Executrix, of the hearing the following day, and upon her inquiry as to whether she should be present, he told her that it wasn't necessary, as the legal questions to be submitted would determine the outcome. The only objection to the A. J. Nicholson claim, was to the allowance of attorney fees. The ruling of the court on October 18, 1938, sustaining the motion to strike these objections from the answer of the Executrix removed all objections to this claim. At the conclusion of the hearing, the court took the matters under consideration until January 4, 1939, when the demurrer to the application for the allowance of the Robert V. Nicholson claim was overruled and the exception of the executrix was noted. There was no other defense left to this claim. The court notified the attorneys on each side of the rulings and directed

the attorney for the two claimants to prepare written forms of judgments allowing each claim, and to submit them to Mr. Mahan for his approval. This was done and Mr. Mahan wrote his approval on each judgment. The court did not compute the interest but left it to the attorneys. The attorney for the claimants did this and the amounts of the judgments had been placed by him in the written forms submitted to Mr. Mahan. The latter testified that he checked the computations before noting his approval on the forms. He had no exceptions noted to either judgment because, as he testified, he had no intention of appealing, and so notified the Executrix and her husband, who represented her and advised her in estate matters.

On January 14, 1939, an order was entered on the Robert V. Nicholson claim adjudicating and allowing it as a claim of the third class in the sum of $3,271.20, with interest at 6 per cent from January 12, 1939, and costs, including $54.54 allowed claimant as attorney fees. On the same day a like order was entered on the Arthur J. Nicholson claim in the sum of $2,934.44 with interest at 6 per cent from January 12, 1939, with costs including $142.17, allowed the claimant for attorney fees, computed separately on each note. Attorney fees on each claim were computed at three fourths of the statutory rate. No appeal was taken from either judgment. On April 21, 1939, the Executrix filed a petition for authority to sell the business property to pay the balance of $1,800 owing the bank on the property, and the two claims in question. Judgment was granted as prayed.

On April 28, 1939, the appellant, Paul R. Nicholson, filed motion to set aside the judgment. This was after the term had passed in which the judgments were entered. The grounds alleged were: that the judgments reduced the assets of the estate; that they were entered without notice to appellant (Paul) of any kind, or as required by Code section 11820; that the indebtedness indicated in the memorandum of the testatrix of June 28, 1920, was not a general debt, but only a claim against her homestead, and was a gift; that it was barred by the general statute of limitations; that interest should not have been allowed from the date of the note but only from the death of testatrix, as stated in the memorandum. The motion was overruled. Ap-

pellant (Paul) on May 15, 1939, filed "petition in lieu of motion" of April 28, 1939, on behalf of himself and others in like situation, to set aside the judgment on the Robert V. Nicholson claim. The grounds were in substance those alleged in the motion. Clara B. Nicholson, appellee, demurred to the petition on several grounds. Among the grounds were that the judgments were as those in an ordinary action at law under section 11963, and no motion for new trial was filed; that no notice was served as required by Code section 12794; that the petition did not comply with Code chapter 522; that Paul R. Nicholson, as one interested in the estate was charged with notice of proceedings therein; that notice to the Executrix was sufficient; that the defenses raised were adjudicated on presentation by the executrix. The same appellee also attacked the petition by motion to strike upon the ground that the allegations were conclusions. On October 17, 1939, Paul filed additional objections to the allowance of the claim on the ground that the claim was of the fourth class, and not of the third class, since it was not filed within the six months' period after the publication of notice of appointment of the executors. Paul, also, on October 17, 1939, filed the same objections against the order allowing the Arthur J. Nicholson claim, which he that day filed against the Robert V. Nicholson claim. Both of the appellees moved to strike these additional objections. On December 14, 1939, Paul filed additional objections to both claims, on the grounds that since H. S. Hunn, the attorney of each claimant, as attorney for the estate knew the notice of the appointment of the executors was insufficient, the claimants were charged with his knowledge, and were estopped from claiming that their claims were of the third class.

On March 28, 1940, the appellant-executrix filed petition and application to set aside the order of January 14, 1939, allowing the A. J. Nicholson claim upon the grounds: that there was no hearing on the merits; that there is no record of any proper hearing on the merits; that the Executrix has a good defense; that the claim is not valid; that the judgment is erroneous, inequitable and unjust because it allows attorney fees to claimants for attorneys who formerly acted for the estate, and that because thereof the judgment is a fraud on the estate; that no proper attorney's fee affidavit was filed; that the Executrix was denied

a full hearing; that the judgment was obtained secretly. A similar petition and application upon the same grounds was filed at the same time against the order on the R. V. Nicholson claim. In addition to the above-stated allegations, it also alleged that this claim was barred by the statute of limitations. She repeated this allegation in an amendment to the petition, which also contained the·general allegation that the order was "entered through fraud and collusion." The Executrix also amended her petition against the A. J. Nicholson claim, by alleging that the matters theretofore pleaded by her show irregularity and fraud in the procurement of the order, and a mistake in the computation of interest. Claimants filed demurrer to each petition. When they called them up for ruling, the court stated that he would overrule them at that time so that the charges of fraud and collusion could be fully heard. After full hearing where opportunity was given to·appellants to go into the merits of the claims, the trial court on April 18, 1940, filed a memorandum opinion finding: that at the hearing preceding the judgment of January 14, 1939, but one question was presented by the attorneys, and that was the question of the statute of limitations on the R. V. Nicholson claim; that there was no secrecy, fraud or collusion of any kind; that there was no contention on the part of anyone that the memorandum of the testatrix of June 28, 1920, was not in her handwriting; that the "Rob" referred to was her son, Robert V. Nicholson, the claimant; that no other $1,000 note appears in the records; that the trial court believed the writing admits liability for the note and promises to pay the indebtedness at her death with interest; and, that the note is not barred by the statute of limitations. Judgment was thereupon entered denying the petitions of the appellants, on May 8, 1940.

On May 27, 1940, Paul R. Nicholson filed motion asking the court to reconsider the order allowing interest on the claim of R. V. Nicholson, and to deny any interest. The motion was overruled. The Executrix and Paul R. Nicholson perfected separate appeals. On the appeal of the Executrix, the following errors are assigned:

"Error Relied Upon For Reversal No. 1. The court erred in entering its order on January 4, 1939, allowing claims of R.

V. Nicholson and Arthur J. Nicholson in said orders both of which orders allowed said claims as claims of the third class in this estate. The error of the trial court consists and lies in the fact that objections had been filed by the executrix to the allowance of said claims. The issues were joined by the executrix with the claimants, and no trial on the merits was had by the court on the issues as joined. (Abstract of the record, pages 29, 30, 31, 32.)''

This assignment of error falls far short of a proper compliance with our Rule 30. In substance, it states that the court erred: (1) in allowing the claims; (2) in allowing them as claims of the third class; (3) in having no trial on the merits. No part of the record is set out, and grounds of complaint are not stated. The pages of the abstract referred to contain verbatim copies of the orders of January *14*, 1939.

The "Brief Points and Authorities" are as follows:

"A. These claims having been filed after the first six months following the posting of the notice given by the executors of their appointments, are not claims of the third class. Section 11970, Code of 1939.

"B. The allowance of said claims was erroneous in that no hearing was had on the issues as joined by the executrix with the claimants. That the amounts as allowed by the Court was incorrect as to the amount and not correctly computed. [Citing] Rabbett v. Connolly, 153 Iowa 607; In re Estate of Douglas, 140 Iowa 603; [and] In re Estate of Scholes, 170 Iowa 93.

"C. It was error on the part of the Court to allow attorney fees to the claimant's attorney in said orders for the reason that no attorney's fee affidavit was filed with the original claim but was subsequently filed some two and one-half years later. Further that said attorney fees as allowed were incorrectly allowed as to the amount thereof and were not allowed according to the statute.''

The last sentence of "B" and all of "C" have no relevancy to the error assigned. The authorities under "B" have little application to the point. The argument has little relevancy or application to either the assignment or any of the points. There is no basis whatever for the claim that no proper

1204

notice was served upon the Executrix, or that there was no hearing upon the merits. Notice was served on the Executrix as ordered by the court, on the hearing on both claims. A few days later, she wrote and signed her written satisfaction with the correctness of the A. J. Nicholson claim, and its allowance upon the back of the claim as filed. On June 4, 1938, she filed answer admitting the justness of the claim and that she had no objection to its allowance, except as to the attorney fee. The latter objection was stricken on motion, and at the time of the hearing on the claim there was not even a paper defense to this claim alleged. Eight days after the application for allowance of the R. V. Nicholson claim was filed, she filed answer to the claim. On motion every defense, including the defense that the claim was not of the third class, was stricken. The only defense left was that of the general statute of limitations, which was attacked by demurrer of the claimant. The demurrer was argued orally and by submission of briefs by both sides, and Mr. Mahan informed the court that the only question in the case was that of the statute of limitations, and that if the court overruled the demurrer and held that the claim was not barred, the court should make an order establishing the claim. This was done. The order on each claim was prepared by the attorney for appellees and approved by the attorney for the Executrix. Mr. Mahan testified that the Executrix was fully advised by him as to all of these matters. No appeal was taken by the Executrix from the orders of allowance or from any adverse ruling. No computation or showing of any kind respecting any inaccuracy in the amount of interest on the A. J. Nicholson claim was made, either in the hearing resulting in the adjudication of January 14, 1939, or in the final hearing involved in this appeal.

In the printed argument on this first assignment of error, counsel for Executrix discusses the question of the statute of limitations with respect to the R. V. Nicholson claim, but such matter is not complained of or even suggested in the error assigned.

The matter of whether the claims are of the third class and the questions bearing thereon are hardly mentioned in the argument. As noted in our fact statement, the Will was probated, the Executors were appointed and Mrs. Beymer quali-

fied, and the notice of the appointment was posted, all on February 6, 1933. Arthur J. Nicholson took the oath of qualification on February 9, 1933. Letters testamentary were issued by the Clerk on February 16, 1933, with the direction indorsed thereon for notice by one posting. It is the contention of the appellee that since there was no direction as to the kind of notice at the time of the posting on February 6, 1933, that notice was void and was not validated by subsequent direction by the Clerk, and that the posting of the notice did not start the period of limitation for the filing of claims. It is our judgment that there is merit in the contention. We have repeatedly held that a notice given by an administrator or an executor without the direction of the court or the clerk and indorsed upon the letters issued, as provided by section 11890 of the Code of 1931, and like sections in earlier Codes, is no notice whatsoever. See McConaughy v. Wilsey, 115 Iowa 589, 88 N. W. 1101; Craig v. Craig's Estate, 167 Iowa 340, 149 N. W. 454; In re Estate of Camp, 188 Iowa 734, 176 N. W. 795; Anthony v. Wagner, 216 Iowa 571, 246 N. W. 748; Mosher v. Goodale, 129 Iowa 719, 106 N. W. 195; Stewart, Admr., v. Phenice, 65 Iowa 475, 22 N. W. 636; Easton v. Somerville, 111 Iowa 164, 82 N. W. 475, 82 Am. St. Rep. 502; Spicer v. Administrator, 201 Iowa 99, 104, 202 N. W. 604; and, Johnson v. Barker, 57 Iowa 32, 10 N. W. 289.

Judge Jordan evidently considered the notice of no force. On April 26, 1939, on his own motion, he made an order that because the notice of appointment was prematurely posted it was, therefore, invalid. He ordered the Executrix to post a new notice which she did. Even after this second posting, the Executrix thought there was yet no notice, and she petitioned the court on April 3, 1940, alleging that the order of Judge Jordan's was ineffective because it was not made on an application in writing as provided by Code section 12072. Judge Halloran agreed with her and on April 12, 1940, made an order directing the Executrix to again post notice of her appointment, which she did. We are of the opinion that both claims were filed well within six months after any proper notice of the Executors' appointment was given, and the court rightly adjudged them to be claims of the third class.

■ The Executrix also contends a notice of hearing served more than two years after the year of probate is not a valid notice. There are no statutory provisions, nor decisions of this court fixing, even inferentially, the time when the notice of hearing on a claim of the third class must be given. Godes v. Hassen, 81 Iowa 197, 46 N. W. 980; Phelps, Dodge & Palmer Co. v. Greenbaum, 87 Iowa 347, 54 N. W. 76; Schriver v. Holderbaum, 75 Iowa 33, 39 N. W. 125; Smith v. McFadden, 56 Iowa 482, 9 N. W. 350.

■ The "Error Relied Upon For Reversal No. 2" of the Executrix states that:

"The trial court erred in entering its judgment in this matter on May 8, 1940, wherein it refused to set aside its orders entered on January 14, 1939, and dismissing the petitions, objections * * * of Grace Beymer, executrix * * * and of Paul R. Nicholson by reason of the fact that the executrix established at the hearing had thereon that she had a good defense to said claims, and that said claims were allowed by the court without her knowledge or having an opportunity to be heard thereon, that there is no record in this estate of any hearing had on said claims on the merits thereof, that the claims * * * were not valid claims against this estate."

This general assignment is little more than a repetition of error No. 1. The "brief point" is but a rewording of the matters stated in the assignment. The authorities cited are those under "B" of the first assignment, section 12049, Code of 1939; In re Estate of Sarvey, 206 Iowa 527, 219 N. W. 318; and, In re Estate of Kinnan, 218 Iowa 572, 255 N. W. 632.

■ There is no lack of harmony among our cases as to the controlling principles and rules in a proceeding of this kind.

The provisions of section 12049 of the Code of 1939 have come down to us through preceding Codes. It is found in chapter 509, Title XXXII on "Accounting of executors and administrators," and it is worded thus:

"Mistakes corrected. Mistakes in settlements may be corrected in the probate court at any time before his final settlement and discharge, and after that time by equitable proceed-

ings, on showing such grounds as will justify the interference of the court.''

We have construed these provisions many times. The appellee urges that the section has no application to this case, and that the orders complained of were judgments which must be attacked under the provisions of chapter 552 of the Code. Charges of fraud, collusion and mistake having been set up as grounds for setting aside the allowances, the decisions of the court fully warrant procedure under this section. As stated in McLeary v. Doran, 79 Iowa 210, 214, 44 N. W. 360, 362, the section (2474, Code of 1873) ''was evidently intended as a protection to heirs against the mistakes or fraudulent acts of administrators.'' The protection of the statute is not limited to heirs, but extends to all who have an interest in the estate. Speaking of this statute, the court, in Arnold v. Spates, 65 Iowa 570, 573, 22 N. W. 680, 681, said:

''If the omission to charge himself with the amount occurred by his mistake, and the other circumstances of the case are such as to justify the interference of a court of equity, we have no doubt that a remedy is afforded the parties by said section; and if the administrator fraudulently omitted to include the amount in his reports, or to account for it, it is equally certain that a court of equity would have jurisdiction, even in the absence of any statutory provision, to grant relief against such fraud.''

We have uniformly held that the allowance of a claim by an administrator or executor, or its approval by the Clerk, or an ex parte order of the judge or court, or other ex parte interlocutory orders, are subject to review or correction at any time before the final settlement of the estate. Karr v. Stivers, 34 Iowa 123; Ordway & Husted v. Phelps, 45 Iowa 279; In re Estate of Harsh, 207 Iowa 84, 88, 218 N. W. 537; McDermott v. McDermott's Estate, 138 Iowa 351, 116 N. W. 122; In re Estate of Baker, 226 Iowa 1071, 285 N. W. 641; Ryan v. Hutchinson, 161 Iowa 575, 143 N. W. 433; Byer v. Healy, 84 Iowa 1, 50 N. W. 70; In re Estate of Durey, 215 Iowa 257, 266, 245 N. W. 236; Metcalf v. Baldwin, 143 Iowa 310, 120 N. W. 104; In re Estate of Metcalf, 227 Iowa 985, 289 N. W. 739. Such orders or allowances

1208

have no greater effect than that they are prima facie correct. In re Estate of Durey, 215 Iowa 257, 266, supra. But the allowance of a claim is an adjudication, and, if fairly obtained, is binding upon the administrator or executor, who has notice or is actually before the court, and upon creditors, or heirs who may be deemed to be represented by him. Willett, Admr., v. Malli, 65 Iowa 675, 677, 22 N. W. 922; Ashton v. Miles, 49 Iowa 564. A court of probate having passed upon and adjudicated the claim or other matter, its action will ordinarily be conclusive until impeached for fraud or mistake. Such adjudications have the same effect as other adjudications of a court. Cowins v. Tool, 36 Iowa 82, (a suit in equity); Kows v. Mowery, 57 Iowa 20, 10 N. W. 283. This is particularly true where the administrator does not approve the claim and issues are joined and there has been an appearance or representation of parties interested, and a trial and adjudication of the matters presented. To set aside such an adjudication, there must be established fraud, collusion, connivance, or such conduct or circumstance as prevented the court from fairly passing upon the matter. See for direct or analogous support McLeary v. Doran, 79 Iowa 210, 44 N. W. 360; In re Estate of Kinnan, 218 Iowa 572, 255 N. W. 632; In re Sarvey's Estate, 206 Iowa 527, 219 N. W. 318; Hendron v. Kinner, 110 Iowa 544, 80 N. W. 419, 81 N. W. 783; Anderson v. Droge, 216 Iowa 159, 248 N. W. 344; In re Estate of Sterner, 224 Iowa 605, 277 N. W. 366; Phelps Mtg. Co. v. Thomas, 194 Iowa 1078, 1086, 190 N. W. 399; Murphy v. Hahn, 208 Iowa 698, 707, 223 N. W. 756; Ryan v. Hutchinson, supra; In re Estate of Miller, 169 Iowa 24, 149 N. W. 227, L. R. A. 1915C, 736; In re Estate of Scholes, 170 Iowa 93, 152 N. W. 3; In re Estate of Douglas, 140 Iowa 603, 117 N. W. 982; In re Estate of Gray, 178 Iowa 517, 159 N. W. 978; In re Estate of Davenport, 85 Iowa 293, 52 N. W. 197; Tucker v. Stewart, 121 Iowa 714, 97 N. W. 148; In re Estate of Davie, 224 Iowa 1177, 1183, 278 N. W. 616; Harding v. Troy, 217 Iowa 775, 252 N. W. 521.

The Executrix argues that the establishment of fraud or mistake is not always necessary, and contends that it need be shown only that the amount allowed is "erroneous, unjust and inequitable." There is language to that effect in In re

Scholes, supra (170 Iowa 93), and in Rabbett v. Connolly, 153 Iowa 607, 614, 133 N. W. 1060, but the language was used of cases where the order of the court was perfunctorily made on the report of the administrator or executor, and not after a contested hearing. Also in In re Estate of Durey, supra (215 Iowa 257, 265, 266, 245 N. W. 236, 240), the order set aside was one "improvidently granted and constituted a mistake." But in the case before us, there is no evidence of injustice or inequity. The Executrix testified that both claims are valid and just. The trial court found that there was no fraud, collusion, or secrecy.

This is a law action. The findings of the court, if there be supporting evidence, have the force and effect of a verdict by a jury, and as the case is not reviewable de novo, they are binding upon us. Olson v. Roberts, 218 Iowa 410, 255 N. W. 461; Anderson Estate v. Stason & Knoepfler, 216 Iowa 1017, 250 N. W. 183; In re Estate of O'Hara, 204 Iowa 1331, 217 N. W. 245; In re Guardianship of Roland, 212 Iowa 907, 237 N. W. 349; In re Estate of Green, 227 Iowa 702, 706, 288 N. W. 881; In re Estate of Davie, supra (224 Iowa 1177).

 . In none of the various pleadings attacking either claim is there proper allegation of facts to support the charges of fraud, collusion, mistake or inequity. Certainly the general allegation of fraud and collusion does not plead such a defense. In re Estate of Kessler, 213 Iowa 633, 239 N. W. 555; In re Estate of Davie, supra (224 Iowa 1177).

 The fraud, collusion, or mistake which will authorize the setting aside of a judgment, or an adjudication of this kind must be such as prevented a proper trial. It must be extrinsic or collateral to the matter directly involved in the adjudication, and not intrinsic in character and such as inheres in the adjudication rendered. Bradbury v. Wells, 138 Iowa 673, 677, 115 N. W. 880, 16 L. R. A., N. S., 240; Tucker v. Stewart, 121 Iowa 714, 97 N. W. 148; Murphy v. Hahn, supra (208 Iowa 698, 707); Joor v. Joor, 227 Iowa 870, 873, 289 N. W. 463; Harding v. Troy, supra (217 Iowa 775). The matters relied upon by appellants were the complaint about the attorney fee, the statute of limitation, and whether the claims were of the third class. The trial court had full knowledge of all of these

matters and passed upon them. They were questions of law and not mistakes of fact, as contemplated by section 12049. In re Estate of Weidman, 209 Iowa 603, 228 N. W. 571.

The judgment of the trial court in refusing to set aside the adjudication of the claim filed by Arthur J. Nicholson must be sustained.

The appellant, Paul R. Nicholson, was the son of a devisee who predeceased the testator. He was an adult living in the county where the estate was being probated. He knew of his rights in the estate because early in the administration he had taken an assignment of his brother's interest as security. As such heir, it was not necessary that he be served with notice, or be made a party to any hearing upon the allowance of these claims. See In re Estate of Davenport, supra (85 Iowa 293); Dillinger, Admr., v. Steele, 207 Iowa 20, 222 N. W. 564; In re Estate of Kinnan, supra (218 Iowa 572); Ryan v. Hutchinson, supra (161 Iowa 575).

His first assignment of error is with respect to the establishing of the A. J. Nicholson claim as of the third class. What we have said herein on the appeal of the Executrix disposes of this assignment adversely to this appellant's contention.

His second assignment of error makes the same assignment as against the claim filed by R. V. Nicholson. He contends that since claimant alleged in her application for allowance of claim, that the estate was opened on February 6, 1933, she was thereafter estopped from asserting that no proper notice of the appointment of the Executors was given. We see no merit in this claim. There was no proper notice given and her allegation in the application could not alter this fact. Furthermore, none of the essential elements of an estoppel were shown. Appellant also makes this claim in his first assignment of error. With respect to the Arthur J. Nicholson claim, this appellant also contends that since the claimant was an Executor of the estate it was his duty to see that a proper notice of his appointment was given. Generally speaking, we think that such is the duty of an executor. But there are qualifying circumstances in this case. Arthur J. Nicholson lived in California. His coexecutor lived in Des Moines. Attending to the

posting of this notice was a duty which he might properly leave to the executor who lived in the county and county seat where the estate was being administered. In re Estate of Ring, 132 Iowa 216, 109 N. W. 710, is not applicable. No ulterior motive on his part is shown. We are constrained to hold that appellant's claim is without merit. For all of the reasons stated herein, it is our judgment that the court did not err in the classification of the claims. No other errors are assigned or argued by this appellant.

With respect to the appeal of the claimants (No. 45507) from the order of the court granting the Executrix the authority to appeal at the expense of the estate, it is our conclusion that the ruling should be affirmed. She had a right to appeal without the consent of the court (Mortenson v. Knudson, 189 Iowa 379, 392, 176 N. W. 892). We have no reason to question the good faith of the Executrix. The fact that she may have benefited by a successful appeal does not alter the situation. Others of the heirs would likewise have benefited. It was a matter for the discretion of the trial court, with which we dislike to interfere. If the charges allowed are reasonable, the appellees have no reasonable ground to complain. The district court should see that they are reasonable. The motions to dismiss the appeal and to strike the amended abstract and argument of appellee are denied. The judgments as to both claims are affirmed.—Affirmed.

MILLER, C. J., and MITCHELL, STIGER, SAGER, OLIVER, WENNERSTRUM, GARFIELD, and HALE, JJ., concur.